DREIER LLP
Ira S. Sacks
Melanie J. Sacks
499 Park Avenue
New York, NY 10022
(212) 328-6100

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x
CJ APPAREL GROUP, LLC                          :
                                               :
            Plaintiff,                         :
                                               :   Civ. Act. No. 07-6413 (DC)
      v.                                       :
                                               :
RUSSELL NEWMAN, INC.,                          :   **COMPLAINT**
                                               :
            Defendant.                         :
------------------------------------------------------------------------- x

Plaintiff CJ Apparel Group, LLC, by its attorneys, Dreier LLP, as and for its complaint against Defendant Russell-Newman, Inc., alleges on knowledge as to its own acts and otherwise on information and belief as follows:

## PARTIES

1.    Plaintiff CJ Apparel Group, LLC (hereinafter "CJ") is a Delaware corporation with its principal place of business located at 1411 Broadway, New York, NY 10018.  CJ is the owner of certain famous and valuable trademarks, including CARIBBEAN JOE, HAVANA JACK'S CAFÉ, LA CABANA, ISLAND TRADER, SUNSET COVE and JAMAICA BAY (the "Licensed Trademarks").

2.    Defendant Russell-Newman, Inc. (hereinafter "Russell-Newman") is and was a Texas corporation, with its principal place of business located at 600 N. Loop 288, Denton, TX 76209.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter on the grounds of diversity, pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. Venue is properly founded in this district under 28 U.S.C. § 1391(a)(2) and (3), as well as pursuant to Paragraph 20 of the License Agreement dated October 1, 2003, as amended on January 1, 2005, between CJ and Russell-Newman (hereinafter, the "License Agreement")

## THE LICENSE AGREEMENT

5. On or about October 1, 2003, AHG Licensing, Inc. ("AHG"), as Licensor, and Russell-Newman, as Licensee, entered into the License Agreement, pursuant to which AHG licensed Russell-Newman the exclusive right to manufacture, promote, advertise and distribute robes, sleepwear, loungewear and underwear for men, women and children bearing the Licensed Trademarks (the "Licensed Products") in the United States and its Territories. A copy of the License Agreement is annexed hereto as Exhibit 1.

6. The original term of the License Agreement was to be from October 1, 2003 through January 31, 2008. (See Ex. 1, ¶ 2 and Exhibit A thereto). However, as explained below, the term of the License Agreement was extended through January 31, 2009 pursuant to the First Amendment to License Agreement dated January 1, 2005 (the "Amendment," attached hereto as Exhibit 2).

7. On or about December 22, 2006, AHG assigned all of its right, title and interest in the Licensed Trademarks and the License Agreement (in addition to other intangible and tangible assets) to CJ. Accordingly, CJ is the current owner of the

Licensed Trademarks and is now the licensor in the License Agreement. Notice of the assignment of the License Agreement was provided to Russell-Newman in or about March 2007.

8. Paragraph 7 of the License Agreement provided that, in consideration for the right to sell and market the Licensed Products, Defendant was to pay CJ a royalty equal to the greater of (i) five percent (5%) of Russell-Newman's net sales of the Licensed Products, as such sales were defined and calculated under the License Agreement; or (ii) a guaranteed annual minimum royalty specified in the License Agreement (the "Guaranteed Minimum Royalties"). (See Exhibit 1, ¶ 7 and Exhibit A thereto).

9. Paragraph 8 of the License Agreement further required Defendant to give CJ quarterly reports of Defendant's net sales of the Licensed Products. Specifically, Defendant was required to provide a full, certified report setting forth (i) the gross sales of all Licensed Product shipped during the quarter; (ii) the amount of royalties due CJ from Russell-Newman for such quarter; and (iii) any other information reasonably requested by CJ, within thirty (30) days of the end of each quarter. (Exhibit 1, ¶ 8(a)).

10. Furthermore, Paragraph 8 required that Defendant's royalty payment be submitted with the required quarterly reports, within thirty (30) days of the end of each quarter. The quarterly royalty payment was to be paid in the amount of either (i) the royalty percentage payment of gross sales; or (ii) one-quarter of the Guaranteed Minimum Royalties for the applicable year, whichever was greater. (Exhibit 1, ¶ 8(b)).

11. If Defendant failed to make a royalty payment when due under the License Agreement, such payment bore interest at the rate of fifteen percent (15%) per year until

paid. (Exhibit 1, ¶ 8(e)).

12.    The amount of the Guaranteed Minimum Royalties was determined under Exhibit A of the License Agreement, which divided the term of the License Agreement into four periods, and specified the Guaranteed Minimum Royalties due for each period. (See Exhibit 1, Exhibit A thereto). For Period 1, defined as October 1, 2003 through January 31, 2005, the Guaranteed Minimum Royalties were $100,000.00. Periods 2 through 4 of the License Agreement each consisted of one year, with Guaranteed Minimum Royalties of $250,000.00, $400,000.00 and $450,000.00, respectively. The total Guaranteed Minimum Royalties due CJ from Russell Newman pursuant to the License Agreement, therefore, were $1,200,000.00. (Exhibit 1, Exhibit A thereto).

13.    Finally, the License Agreement provided that CJ could terminate the License Agreement in the event that Defendant breached any of its obligations under the License Agreement, among other events. (Exhibit 1, ¶ 13(a)(B)(ii)).

14.    Russell-Newman paid the royalties required under the License Agreement during its initial term, from October 1, 2003 to January 31, 2005.

15.    Prior to the expiration of the first period of the License Agreement, however, Russell-Newman approached AHG and requested relief from payment of the Guaranteed Minimum Royalties under the License Agreement, due to difficulties Russell Newman was purportedly having in effectively launching the Licensed Products.

16.    As an accommodation to Russell-Newman, AHG agreed to amend the License Agreement by extending the term of the License Agreement by one year, to January 31, 2009. The parties then executed the Amendment.

17.    The total Guaranteed Minimum Royalties due under the Amendment

remained $1,200,000.00, but such royalties were now payable over a period of sixty-four months, rather than the original fifty-two month contractual term. All other terms and conditions of the License Agreement remained in effect. (See Exhibit 2, ¶ 4).

18.     Specifically, the Amendment provided that the Guaranteed Minimum Royalties were to be paid as follows:

| Period | Dates | Guaranteed Minimum Royalties |
|---|---|---|
| 1 | 10/1/03 - 1/31/05 | $75,000.00 |
| 2 | 2/1/05 - 1/31/06 | $200,000.00 |
| 3 | 2/1/06 - 1/31/07 | $300,000.00 |
| 4 | 2/1/07 - 1/31/08 | $300,000.00 |
| 5 | 2/1/08 - 1/31/09 | $325,000.00 |

19.     Nevertheless, even after the Amendment took effect, Russell-Newman continued to request additional accommodations with respect to the Guaranteed Minimum Royalties, including reduction of such payments, and/or full release from the License Agreement.

**DEFENDANT'S BREACHES OF THE LICENSE AGREEMENT**

20.     Defendant has repeatedly breached the License Agreement.

21.     For example, and not by way of limitation, Defendant breached Paragraphs 7 and 8 of the License Agreement by failing to pay Guaranteed Minimum Royalties in the amount of $75,000.00 due with respect to the fourth quarter of 2006 (which ended on January 31, 2007) on or before March 1, 2007.

22.     Also for example, and not by way of limitation, Defendant again breached Paragraphs 7 and 8 of the License Agreement by failing to pay Guaranteed Minimum

Royalties in the amount of $75,000.00 due with respect to the first quarter of 2007 (which ended on April 30, 2007) on or before May 31, 2007.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

23. Plaintiff CJ repeats and reasserts the allegations contained in Paragraphs 1 through 22 of the Complaint as if set forth fully herein.

24. The License Agreement constitutes a valid and enforceable contract between CJ and Russell-Newman. CJ has performed all of its material obligations under the License Agreement.

25. Defendant has committed numerous breaches of the License Agreement, including but not limited to:

    a. Failure to pay Guaranteed Minimum Royalties owed for the fourth quarter of 2006, in the amount of $75,000.00;

    b. Failure to pay Guaranteed Minimum Royalties owed for the first quarter of 2007, in the amount of $75,000.00.

26. As a result, CJ has been damaged in amount to be proved at trial, presently estimated to exceed $150,000.00, plus interest due at a rate of fifteen percent (15%) per annum.

WHEREFORE, CJ demands judgment against Defendant, as follows:

    A. For damages in an amount to be determined at trial, but in any event not less than $150,000.00, plus interest due at a rate of fifteen percent (15%) per annum;

    B. For an award of the costs, disbursements and attorney's fees) incurred by CJ as a result of enforcing its rights under the License Agreement against Defendant;

    C.    For such other relief as this Court deems just and proper.

Dated: New York, New York
       July 12, 2007

                     DREIER LLP

            By:    s/Ira S. Sacks_____
                     Ira S. Sacks
                     Melanie J. Sacks
                     499 Park Avenue
                     New York, NY 10022
                     (212) 328-6100
                     (212) 328-6101 (facsimile)

                     Attorneys for Plaintiff CJ
                     Apparel Group, LLC