Donald L. Kreindler (DK 5858)
dkreindler@phillipsnizer.com
Jeremy D. Richardson (JR 7706)
jrichardson@phillipsnizer.com
PHILLIPS NIZER LLP
666 Fifth Avenue
New York, New York 10103-0084
(212) 977-9700
Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
CJ APPAREL GROUP, LLC,                : **ECF CASE**
                                      :
                          Plaintiff,  : Docket No. 07 CV 6413
                                      :
            v.                        : **ANSWER,**
                                      : **COUNTERCLAIMS**
RUSSELL NEWMAN, INC.                  : **and JURY DEMAND**
                                      :
                          Defendant.  :
                                      :
------------------------------------------------------------------x

Defendant, Russell Newman, Inc. ("RN"), by its attorneys, Phillips Nizer LLP, answers the complaint of CJ Apparel Group, LLC ("CJ") and states its counterclaims, as follows:

1. RN lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the complaint, and on that basis denies each and every allegation contained in paragraph 1 of the complaint.

2. RN admits the allegations contained in paragraph 2 of the complaint.

3. RN admits the allegations contained in paragraph 3 of the complaint.

4. RN denies that venue is properly founded in this district pursuant to 28 U.S.C. §1391(a)(2) and (3), but admits that venue is properly founded pursuant to the License Agreement.

1014968.3

5. In response to paragraph 5 of the complaint, RN admits that it entered into the License Agreement with AHG Licensing, Inc. ("AHG"), and respectfully refers the Court thereto for the provisions, terms and conditions set forth therein.

6. In response to paragraph 6 of the complaint, RN admits that it entered into the License Agreement with AHG and respectfully refers the Court thereto for the provisions, terms and conditions set forth therein. RN admits that the License Agreement was modified by a First Amendment to the License Agreement and respectfully refers the Court thereto for the provisions, terms and conditions set forth therein.

7. In response to paragraph 7 of the complaint, RN admits that RN received a notice purporting to assign all right, title and interest, but RN lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the complaint, and on that basis denies each and every allegation contained in paragraph 7 of the complaint.

8. In response to paragraph 8 of the complaint, RN denies that the License Agreement provided for any payment to plaintiff and states that any right of licensor to receive any payments were contingent upon licensors proper performance under the License Agreement.

9. In response to paragraph 9 of the complaint, RN denies that the License Agreement obligated RN to issue any reports to plaintiff and states that any right of licensor to receive any payments were contingent upon licensors proper performance under the License Agreement.

10. In response to paragraph 10 of the complaint, RN respectfully refers the Court to the License Agreement for the provisions, terms and conditions set forth therein.

11. In response to paragraph 11 of the complaint, RN respectfully refers the Court to the License Agreement for the provisions, terms and conditions set forth therein.

1014968.3

12. In response to paragraph 12 of the complaint, RN denies the total royalties due CJ under the agreement were $1.2 million and respectfully refers the Court to the License Agreement for the provisions, terms and conditions set forth therein.

13. In response to paragraph 13 of the complaint, RN denies that the License Agreement provided for any right of CJ to terminate the License Agreement and respectfully refers the Court thereto for the provisions, terms and conditions set forth therein.

14. RN admits the allegations contained in paragraph 14 of the complaint.

15. In response to paragraph 15 of the complaint, RN admits that it and AHG discussed amending or canceling the License Agreement but denies the balance of the allegations set forth in paragraph 15 of the complaint.

16. In response to paragraph 16 of the complaint, RN admits that it and AHG amended the License Agreement and respectfully refers the Court to the First Amendment to the License Agreement for the provisions, terms and conditions set forth therein. RN denies the balance of the allegations set forth in paragraph 16 of the complaint.

17. In response to paragraph 17 of the complaint, RN respectfully refers the Court to the License Agreement and the First Amendment to the License Agreement for the provisions, terms and conditions set forth therein.

18. In response to paragraph 18 of the complaint, RN respectfully refers the Court to the First Amendment to the License Agreement for the provisions, terms and conditions set forth therein.

19. In response to paragraph 19 of the complaint, RN denies that is sought accommodations but admits that RN and AHG discussed further potential modifications to the License Agreement.

20.   RN denies the allegations contained in paragraph 20 of the complaint.

21.   RN denies the allegations contained in paragraph 21 of the complaint.

22.   RN denies the allegations contained in paragraph 22 of the complaint.

23.   RN reasserts its responses to the previous allegations as if set forth fully herein.

24.   RN denies the allegations contained in paragraph 24 of the complaint.

25.   RN denies the allegations contained in paragraph 25 of the complaint.

26.   RN denies the allegations contained in paragraph 26 of the complaint.

### FIRST AFFIRMATIVE DEFENSE

27.   The License Agreement was procured by fraud on the part of AHG and is, therefore, void *ab initio*.

### SECOND AFFIRMATIVE DEFENSE

28.   AHG, CJ's purported assignor, materially breached the License Agreement and CJ is therefore legally precluded from relying upon other provisions of said License Agreement.

### THIRD AFFIRMATIVE DEFENSE

29.   CJ's claims are barred by the doctrines of estoppel, laches and/or waiver.

### FACTS COMMON TO ALL COUNTERCLAIMS

30.   RN is in the business of manufacturing robes, sleepwear, loungewear, underwear and related products for men, women and children which RN sells to many retailers both under brand names and private label.

31.   In or about mid-2003, RN and AHG entered into negotiations for RN to license the Caribbean Joe and other trademarks from AHG to be used in connection with a line of robes, sleepwear, loungewear and underwear for men, women and children.

1014968.3

32. As an inducement to RN to enter into the License Agreement, AHG, by Ken Sitomer and Jonathan Spears, specifically represented to David Martino and others with RN that the Trademarks "have established prestige and goodwill and are well recognized in the trade and by the public and that products bearing the Trademarks have a reputation of high quality, style and workmanship."

33. As a further inducement to RN to enter into the License Agreement, AHG, by Ken Sitomer and Jonathan Spears, specifically represented to David Martino and others with RN that sales of Caribbean Joe brand sportswear had been growing in each of Men's Wear, Women's Wear and Childrenswear for each of the past several years prior to execution of the License Agreement.

34. As a further inducement to RN to enter into the License Agreement, AHG, by Ken Sitomer and Jonathan Spears, specifically represented to David Martino and others with RN that sales of Caribbean Joe brand sportswear were being sold in substantial quantities in men's wear, women's wear and children's wear to each of the following retailers and doors: Caribbean Joe=Bealls 60 doors, Belk 211, Bon Ton 40, Boscovs 36, Elder Beerman 66, Bon Marche 39, Burdines 41, Macys East 91, Macys West 66, Rich's 60, Famous Barr 40, Filenes 96, Foleys 64, Hechts 80, Robinson May 71, Carsons 143, Proffits 54, Stage 100, Marshall Field 54, Havana Jack's Café=Fred Meyer 124 doors, Kohl's 500, La Cabana-Bobs 34 doors, Goody's 360, Sears 55, Mervyns 264, Meijer 110, Jamaica Bay-JCP 540 doors, Sunset Cove=Dillard's 250 doors.

35. As a further inducement to RN to enter into the License Agreement, AHG, by Ken Sitomer and Jonathan Spears, specifically represented to David Martino and others with RN that the Caribbean Joe brand sportswear products were "full-year brands" in men's wear, women's

1014968.3

wear and childrenswear, and that AHG intended to promote, advertise and sell the brand full-year instead of for particular seasons.

36. As a further inducement to RN to enter into the License Agreement, AHG, by Ken Sitomer and Jonathan Spears, specifically represented to David Martino and others with RN that AHG had a successful, cooperative and growing relationship with its children's licensee Mamiye Bros., Inc., and it withheld from RN and failed to disclose that AHG's relationship with its children's wear licensee had become so acrimonious and adverse that it would soon be terminated, with the result that little or no children's sportswear products under the Trademark Caribbean Joe were being sold to the retail customers to whom RN hoped to sell sleepwear under the Caribbean Joe Trademark.

37. These representations were extremely important to RN because it is extremely unlikely for any retailer to carry a Caribbean Joe brand men's, women's or children's robes, sleepwear or loungewear unless that retailer is also carrying Caribbean Joe brand sportswear.

38. AHG well knew that RN's ability to sell men's women's and children's sleepwear under the Trademarks to any particular retailer was dependent upon whether that retailer was purchasing the licensed brands in men's, women's and children's sportswear.

## AS AND FOR A FIRST COUNTERCLAIM
## FRAUD

39. RN repeats and realleges each and every allegation set forth in paragraphs 30 through 38 of this Answer and Counterclaim as fully and completely as if set forth herein.

40. AHG knowingly misrepresented the prestige and goodwill of the Trademarks.

41. AHG knowingly misrepresented the recognition of the Trademarks in the trade and by the public.

1014968.3

42. AHG knowingly misrepresented that sales of the licensed brands in men's, women's and children's' sportswear had been growing in each of the last several years before the License Agreement was signed.

43. AHG knowingly misrepresented its relationships and its sales to its childrenswear licensee Mamiye Bros., Inc. and to many of the retail customers listed in paragraph 34, supra.

44. AHG falsely represented that it had a satisfactory cooperative and successful relationship with its children's sportswear licensee Mamiye Bros., Inc. and willfully failed to disclose that said relationship was so acrimonious and adversarial that it would soon be terminated. This misrepresentation and failure to disclose were done by AHG to fraudulently induce RN to enter into the License Agreement.

45. AHG knowingly misrepresented that it would sufficiently promote, advertise and support the licensed brands on a full-year basis.

46. Each of the representations made by AHG as set forth in paragraphs 32, 33, 34, 35 and 36 were false, known by AHG to be false, and made for the purpose of inducing RN to enter into a license agreement in which it would be committed to pay guaranteed minimum royalties to AHG irrespective of the level of RN's sales of the licensed products.

47. RN did not know at the time that AHG's representations were false.

48. RN relied upon AHG's representations and was deceived by AHG's representations in entering into the License Agreement.

49. But for AHG's representations set forth in paragraphs 32, 33, 34, 35 and 36, and its failure to disclose its true relationships with its childrenswear licensee Mamiye Bros., Inc. and many of its claimed retail customers, RN would never have entered into the License Agreement.

50.  RN has been injured in an amount that is currently unknown but is believed to be in excess of $1,000,000 as shall be determined at trial.

51.  AHG's pattern of deception and fraudulent conduct was so egregious and harmful that punitive damages should be charged to plaintiff.

## AS AND FOR A SECOND COUNTERCLAIM
## BREACH OF CONTRACT

52.  RN repeats and realleges each and every allegation set forth in paragraphs 30 through 51 of this Answer and Counterclaim as fully and completely as if set forth herein.

53.  AHG represented both through the statements of Messrs. Sitomer and Spears and in the License Agreement that the licensed brands had an established prestige and goodwill. The prestige and goodwill of the licensed brands as identified with women's, men's and children's sportswear apparel was at the essence of the Agreement. Unless retail stores were purchasing the licensed brands in sportswear apparel in their men's, women's and childrenswear departments, such stores would be highly unlikely to buy sleepwear containing the licensed brand.

54.  The License Agreement implicitly recognizes this in paragraph 7, the very provision regarding royalties, stating:

> "... provided, however, that in the event Licensor sustains the loss of a major customer with respect to the sale of Products bearing the Trademark CARIBBEAN JOE and, as a result thereof, Licensee also loses such customer, then the Guaranteed Minimum Royalties and Minimum Net Sales, as provided in Exhibit 'A', shall be correspondingly reduced, during the period in which such loss continues, by the percentage that such loss by Licensee bears to Licensee's total sales of Products bearing such Trademark in the Payment Period in which such loss occurs." (Para. 7, 'Royalties')

55.  On information and belief, AHG has suffered major reductions in its sales of men's, women's or children's sportswear to a number of its major customers, resulting in a similar loss

or major reduction of such customers by defendant. Despite this, AHG failed to reduce the guaranteed minimum royalties and minimum net sales as required by paragraph 7 of the Agreement.

56. AHG failed to perform its obligations in that AHG did not maintain the good will and brand identity associated with the Trademarks and did not appropriately advertise, promote and sell men's, women's and children's sportswear apparel branded with the Trademarks.

57. AHG failed to perform its obligations in that AHG did not during the term of the License Agreement support RN's sale of the licensed goods and did not license other uses of the Trademarks consistent with the existing good will and brand identity associated with the Trademarks.

58. AHG suffered the loss of several major retail customers in its sales of men's, women's or children's sportswear under the licensed brand, and/or suffered major reductions in its sales of men's, women's and/or children's sleepwear defeating the essential purpose of the license. As a result, those major customers either discontinued or substantially reduced their purchases from RN of the licensed products. As a result, RN was totally unable to profitably and successfully sell the licensed merchandise and the very essence and purpose of the License Agreement was defeated.

59. The destruction of the essence and purpose of the License Agreement was the result of AHG's action or inaction in violation of the License Agreement as set forth above.

60. On information and belief, as a result of AHG's action or inaction, sales to a number of AHG's major retail customers have ceased or been significantly reduced.

61. On information and belief, as a result of AHG's action or inaction, sales of children's sportswear have become insignificant, virtually nil or nil.

9

62.     On information and belief, as a result of AHG's action or inaction, sales of men's sportswear have been significantly reduced.

63.     On information and belief, as a result of AHG's action or inaction, goodwill in the Caribbean Joe Trademark has been damaged by poor or defective product in sportswear.

64.     On information and belief, as a result of AHG's action or inaction, instead of a year-round brand with active promotion and sales, the Caribbean Joe brand has now become primarily a spring women's sportswear business, which severely hampers the ability of RN to sell sleepwear (which is sold about 70% in the fall) under the Caribbean Joe label.

65.     RN has been injured in an amount that is currently unknown but is believed to be in excess of $1,000,000 and shall be determined at trial.

## JURY DEMAND

66.     RN demands trial by jury on all claims and issues.

WHEREFORE, defendant, Russell Newman, Inc., respectfully requests judgment as follows:

(a)     dismissing each of plaintiff's causes of action;

(b)     awarding damages on the First Counterclaim of Action in the amount to be determined at trial but believed to be in excess of one million dollars, plus punitive damages in an amount to be determined;

(c)     awarding damages on the Second Counterclaim in the amount to be determined at trial but believed to be in excess of one million dollars;

1014968.3

(d)  together with such further and additional relief as this Court deems fair and proper.

Dated: New York, New York
       August 23, 2007

                                                PHILLIPS NIZER LLP

                                     By: _____
                                            Donald L. Kreindler
                                            Jeremy D. Richardson
                                            Attorneys for Defendant
                                            666 Fifth Avenue
                                            New York, New York 10103-0084
                                            (212) 977-9700

1014968.3

## CERTIFICATE OF SERVICE

A copy of the foregoing was served by electronic mail on August 23, 2007 upon the following:

Ira S. Sacks
isacks@dreierllp.com
Melanie J. Sacks
msacks@dreierllp.com
Dreier LLP
499 Park Avenue
New York, NY 10022
Attorneys for Plaintiff
212-328-6100

_____
Donald L. Kreindler (5858)

1014968.3

Donald L. Kreindler (DK 5858)
dkreindler@phillipsnizer.com
Jeremy D. Richardson (JR 7706)
jrichardson@phillipsnizer.com
PHILLIPS NIZER LLP
666 Fifth Avenue
New York, New York 10103-0084
(212) 977-9700
Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

CJ APPAREL GROUP, LLC,

                    Plaintiff,

v.

RUSSELL NEWMAN, INC.

                    Defendant.

------------------------------------------------------------------x

**ECF CASE**

Docket No. 07 CV 6413

**F.R.C.P. 7.1 STATEMENT**

Pursuant to Federal Rule of Civil Procedure 7.1 (formerly Local General Rule 1.9) and to enable District Judges and Magistrate Judges of the Court to evaluate possible disqualification or recusal, the undersigned counsel for Russell-Newman, Inc. (a non-governmental party) certifies that it has **no** corporate parents, affiliates and/or subsidiaries which are publicly held.

Dated: New York, New York
       August 23, 2007

                                            PHILLIPS NIZER LLP

                                       By: _____
                                                Donald L. Kreindler
                                                Jeremy D. Richardson
                                                Attorneys for Defendant
                                                666 Fifth Avenue
                                                New York, New York 10103-0084
                                                (212) 977-9700

1016312.1